COTTON ET AL. *v.* COMMONWEALTH LOAN COMPANY.

[No. 26,461.   Filed June 19, 1934.]

*W. T. Quillin, Murat W. Hopkins, W. W. Spencer,* and *Herbert M. Spencer,* for appellants.

*Karabell & Lopman,* for appellee.

*James W. Noel, Hubert Hickam, Alan W. Boyd,* and *Robert D. Armstrong,* amici curiae.

FANSLER, J.—Appellee, a petty loan company, operating under §9777 et seq., Burns Statutes 1926 (Acts 1917, p. 401), brought this action upon a promissory note and to foreclose a chattel mortgage given to secure

the same. Appellants demurred for want of facts. The demurrer was overruled, and appellants answered in three paragraphs; the second and third alleging that appellee collected usurious interest, and that there was a failure of consideration by reason of the note having been given in payment of a former note which was usurious. Appellee replied in general denial. There was a trial by the court, and finding and judgment for appellee. Appellants filed a motion for a new trial, which was overruled, and this ruling and the overruling of their demurrer appellants assign as error.

The only ground of demurrer discussed in appellants' brief is appellee's failure to allege that it had filed a bond, as required by §9777, *supra*. It is alleged that appellee was licensed under the Act in question. The filing of a bond is a prerequisite to the issuing of the license. It is not the filing of the bond that permits appellee to transact business, but the issuing of the license, and it will be presumed that the licensing officer required every essential thing to be done before the license was issued, and that the license was regularly issued. The demurrer was properly overruled.

The other questions presented involve but a single proposition. The note sued on provided for interest at the rate of 3½ per cent. per month, the maximum rate provided for by the statute in question. Appellee, in computing and collecting interest, treated thirty days as a month, which had the effect of counting 360 days as a year. Appellants contend that this was in violation of the statute, and that, therefore, the note and mortgage are void, that their answer was sufficient, and that there should have been judgment for appellants. The statute in question provides that:

"Every person, co-partnership and corporation licensed hereunder may loan any sum of money,

goods or things in action not exceeding in amount or value the sum of three hundred dollars and may charge, contract for and receive thereon interest at a rate not to exceed three and one-half per centum per month."

And that:

"If interest or charge in excess of those permitted by this act shall be charged, contracted for, or received, the contract of loan shall be void and the licensee shall have no right to collect or receive any principal, interest or charges whatsoever"

It is urged that the word "month," as used in the statute, means a calendar month; that is 28 days for February, 31 days for March, 30 days for April, etc.; and to support the contention appellee relies upon §247, Burns 1926, §1-201, Burns 1933, §35, Baldwin's 1934, which is as follows:

"The construction of all statutes of this state shall be by the following rules, unless such construction be plainly repugnant to the intent of the legislature or of the context of the same statute: . . .
Fifth. The word 'month' shall mean a calendar month, and the word 'year' shall mean a calendar year, unless otherwise expressed; and the word 'year' be equivalent to the words 'year of our Lord.'"

The petty loan statute was clearly intended to provide for a limited and uniform rate of interest upon small loans for short terms. Interest statutes generally fix an *"annual"* rate. This statute differs in that a *"month"* is the basis. It is provided that interest may be charged "at a rate not to exceed three and one-half per centum per month." If the loan is for less than a month, interest is charged for the actual time of the loan, computed upon the basis of the monthly rate. It was surely not intended that one who borrowed money for ten days in the month of February, should be charged 1/28 of 3½ per cent. per day, and one who bor-

rowed in March, should be charged only 1/31 of that rate per day. We must conclude then that to construe the word "month" as meaning calendar month is plainly repugnant to the intent of the legislature and the context of the statute, and we must seek the true intent when the provision is considered in the light of the purpose of the act and its practical application.

If we are to treat the word "month" as meaning 1/12 of a year, we have a month of 30 5/12 days, and to arrive at the interest chargeable at any date it would be necessary to compute one month's interest for the sum loaned at 3½ per cent. and divide the result by 30 5/12, obviously a difficult and cumbersome method of calculation, and one which would, no doubt, tax the understanding of the average person who resorts to this type of loan. Or, the legislature may have had in mind the commercial month of thirty days. It is a well-known fact that in commercial circles certain recognized tables are used in the computation of interest, and that in these tables 360 days are treated as a year. It appears from the evidence that appellee and practically all of the loan companies operating under the act use the "Meilecke System," which is based on a thirty day month and 360 day year. There seems to be a conflict of authority as to whether computation of interest by such tables constitutes usury where it results in collecting more than the maximum *"annual"* rate provided for by statute. See note—4 Am. & Eng. Ann. Cas. 643.

Although the authorities are generally to the contrary, it was held in the case of *Haas* v. *Flint* (1846), 8 Blackf. 67, that where the legal rate of interest was 10 per cent, the taking of $5.00 in advance as interest upon a $100.00 note, payable in 180 days, was usurious, since 180 days is not six months. The penalty was the forfeiture of the excess interest, but there was no for-

feiture of the principal. In that case it was clear that under the statute a year was the period for which 10 per cent. might be charged as a maximum, but here the meaning of the word month as used in the statute may be debatable. If it be conceded that the legislature intended the word month to mean 1/12 of a year, or 30 5/12 days, we are confronted with the suggestion that the law does not take cognizance of fractional parts of a day, and that, therefore, to arrive at daily interest the monthly interest should be divided by thirty. It has been held that in computing interest for a fraction of a year, a day's interest may be arrived at by dividing a year's interest by 360, and if this is done in good faith, and for the purpose of expediting the computation, it will not be usurious. *Patton* v. *Lafayette Bank* (1906), 124 Ga. 965, 53 S. E. 664, 4 Ann. Cas. 639; *Merchants', etc., Bank* v. *Sarratt* (1907), 77 S. C. 141, 57 S. E. 621, 122 Am. St. 562.

And it has been held that computing interest periodically on average balances, while not exactly accurate, and while it may result in a charge of more than the statutory amount, is not usurious. *First Natl. Bank, etc.,* v. *Waddell* (1905), 74 Ark. 241, 85 S. W. 417; *Hatch* v. *Douglas* (1880), 48 Conn. 116, 40 Am. Rep. 154; *Brown* v. *Vandyke* (1853), 8 N. J. Eq. 795, 55 Am. Dec. 250.

And that deducting interest at the full legal rate in advance, although it results in interest greater than the legal rate if computed on the amount actually received by the borrower, is not usurious. *Fleckner* v. *Bank of U. S.* (1823), 5 U. S. (L. Ed.) 631; *Thornton* v. *Bank of Washington* (1830), 7 U. S. (L. Ed.) 594; *Fowler* v. *Equitable Trust Co.* (1891), 141 U. S. 411; *Goodrich* v. *Reynolds* (1863), 31 Ill. 490, 83 Am. Dec. 240.

Appellants' answer contained no averment of an intent to exact more than the legal rate of interest, and

we must presume that there was no evidence of such intent other than the mere facts as herein outlined. It is said in *Cohee* v. *Cooper* (1846), 8 Blackf. 115, that "To constitute a good plea of usury, it must contain the averment that the alleged usurious agreement was corruptly made." In the case of *Shook* v. *State* (1855), 6 Ind. 113, it is held that, in respect at least to contracts where usury does not appear upon their face, the averment of a corrupt purpose or intention is indispensable. It will be noted that the contract in the case at bar is not usurious upon its face. It is generally agreed that to constitute usury there must exist an intent to exact more than the legal rate, although there are a few cases to the contrary. 27 R. C. L. 221.

An examination of the cases reveals that where a contract on its face purports usury, the intent is apparent, but that where it does not appear on the face of the contract, intent must be gathered from the circumstances in the case. Where more than legal interest is charged from an honest mistake of fact by reason of an error in the computation, or by other inadvertence, it will not constitute usury. A mistake of law is not generally considered sufficient to excuse an over-charge, but there are cases which hold that, even though a contract appears usurious on its face, yet, in the absence of an actual unlawful intent, it is not usurious where the parties acted under an honest but mistaken belief that the interest rate was lawful.

The rule in this state follows the principle that ignorance of the law is no excuse. It was said in the case of *Shook* v. *State, supra*:

". . . to have admitted evidence that the note was made to draw 10 per cent through ignorance of a recent change of the law in relation to interest, would have been a departure from one of the soundest and most imperative rules of the law."

The effect of these authorities is that an answer setting up usury must allege an usurious intention; that where more than the legal rate is charged through inadvertence, mistake of fact, or miscalculation, the contract will be held not to be usurious; but that a mistake of law will not excuse the contract from being usurious. It also appears from the cases that there has been a tendency to hold that, where several methods of computation may be used in arriving at the interest, and one is used which by strict construction would result in more than the legal rate, but with the intention only of expediting the computation or following a convenient business practice, the contract will not be held usurious.

It is the universal rule that statutes providing for forfeitures are to be strictly construed since they are penal in their character, and hence terms and provisions which are of doubtful import or doubtful in their meaning will be given that construction which is least favorable to working a forfeiture.

The identical question here presented, under identical statutes, was before the Supreme Court of Georgia in the case of *Broce* v. *Master Loan Service Inc.* (1930), 171 Ga. 22, 154 S. E. 324. In a brief discussion of the question, the court said:

> "The question here is whether counting a year as 360 days evidences an attempt to secure greater interest than is allowed by law. We think it does not. Naturally a year embraces 365 days. Practically it does not matter that the lender, to conveniently calculate the few cents that may have accrued on a small-loan installment of, say, $2.50 or $5, treats a year as having 360 days or 365 days."

The act in question was amended in 1933, and the following language used:

> "Licensee shall compute all interest on loans made under this act on the basis of the number of

days actually elapsed and for the purpose of such computations a month shall be any period of thirty consecutive days." Acts 1933, p. 814.

The Act of 1917 gave the Auditor of State supervisory power over the licensees under the petty loan statute, including the right to require the keeping of such books and records as will enable the auditor to determine whether the provisions of the act are being observed. The 1919 legislature transferred the power and authority of the auditor to the State Banking Department. We are asked by appellee to take judicial knowledge of the fact that the Division of Industrial Loans of the Banking Department had from time to time issued regulations governing licensees under this statute, and that among the printed rules there was one requiring that "All interest shall be computed on the basis of 30 days to each of the 12 months of the year." And "Interest shall be computed on the exact amount of money for the actual number of days, not to exceed 30 days to the month." It is urged that this long-standing department rule, construing the statute of 1917, as to interest, followed by the legislative enactment of 1933 above referred to, which is in effect an adoption of the departmental rule, amounts to a legislative acquiescence in and approval of the construction placed on the statute by the department. In formulating regulations it was necessary for the departments to construe and interpret the statute. The only interest of the departments was in carrying out the duties imposed upon them by the legislature. These departments interpreted the statute as permitting the computation of interest upon the basis of a thirty-day month, and their published regulations require it to be so computed, and, while these regulations and requirements do not have the effect of law so as to bind the courts, they do have the effect of law in controlling the

methods of licensees under the act, and such licensees would be forced to resort to the courts to avoid complying with the requirements of the departments' regulations. We take notice of the departmental interpretation of the statute as we would take notice of the decision of a court of inferior jurisdiction. It does not bind us in our construction of the statute, but lends support to the contention that the statute may be reasonably construed as intending that thirty days might be treated as a month.

Licensees under the law are, of course, presumed to know the law, and, since the law provides for departmental regulation, are required to know the regulation.

The purpose of the original legislation was the protection of those who are so unfortunate as to be required to borrow money at exorbitantly high rates of interest. The amending Act of 1933 reduced the amount of interest that might be charged upon a sum exceeding $150.00, indicating an intention to reduce the amount to be paid by borrowers rather than to increase it, and if the legislature had interpreted the original act to require that interest might not be charged on the basis of thirty days to the month, it must be deemed to have adopted a contrary policy and increased the interest allowed on loans of $150.00 or less.

There is no question of inadvertence or mistake presented. The only question is the meaning of the statute. In such cases intent will be presumed from a violation of the statute. Under the rules of construction applicable to statutes providing for forfeitures, we interpret it as permitting the computation of interest upon the basis of a thirty-day month, and, therefore, the demurrer to appellants' answer was properly sustained although it had contained an allegation of intent.

Judgment affirmed.